JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

17-cv-2242

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
*Healthcare Services Group, Inc.*

## DEFENDANTS
Oakmont Care, LLC

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  BUCKS
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  ALLEGHENY
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
John C. Kilgannon (jck@stevenslee.com)
Stevens & Lee
1818 Market Street, 29th Floor
Philadelphia, PA 19103                Tel: 215-751-1943

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 2 U.S. Government
Defendant

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 4 Diversity
(Indicate Citizenship of
Parties In Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "x" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of this State | ☒ 1 | ☐ 1 | Incorporated or Principal place of Business in This State | ☒ 4 | ☐ 4 |
| Citizens of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/CC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| | ☐ 330 Federal Employer's Liability | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| ☐ 160 Stockholder's Suits | | | | | ☐ 893 Environmental Matters |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act ☐ 895 Freedom of Information Act |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access of Justice |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 890 Other Statutory Actions |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | | |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 440 Other Civil Rights | ☐ 535 Death Penalty ☐ 540 Mandamus & Other | | | |
| ☐ 245 Tort Product Liability | | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act | | |
| ☐ 290 All Other Real Property | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
28 U.S.C. § 1332; breach of contract

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND
$129,675.99
PLUS ATTORNEYS' FEES, INTERESTS AND COSTS

CHECK YES only if demanded in complaint:
JURY DEMAND   ☐ YES   ☒ NO

## VIII. RELATED CASE (S) IF ANY  NONE
(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE
5/16/2017

SIGNATURE OF ATTORNEY OF RECORD

MAY 16 2017

**FOR OFFICE USE ONLY**
RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

05/16/2017 SL1 1463568v1 104212.00378

**UNITED STATES DISTRICT COURT**

17  2242

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiffs:  Healthcare Services Group, Inc., 3220 Tillman Drive, Suite 300, Bensalem, PA 19020

Address of Defendants:  Oakmont Care, LLC, 26 Ann Street, Oakmont, PA 15139

Place of Accident, Incident or Transaction:  Bucks County/Allegheny County, PA
*(Use Reverse Side For Additional Space)*

Does this case involve multidistrict litigation possibilities?                              Yes☐  No☒
*RELATED CASE, IF ANY:*  NONE
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes☐  No☒

CIVIL: (Place ☒ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
(Please specify)

B. *Diversity Jurisdiction Cases:*
1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases (please specify)

**ARBITRATION CERTIFICATION**
*(Check appropriate Category)*

I, John C. Kilgannon, counsel of record, do hereby certify:
☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: 5/16/17                     _____          82263
                                          John C. Kilgannon, Attorney-at-Law          Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 5/16/17                     _____          82263
                                          John C. Kilgannon, Attorney-at-Law          Attorney I.D.#

CIV.609(9/99)

MAY 16 2017



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HEALTHCARE SERVICES GROUP, :
INC., :
: 
           **Plaintiff,** :                   **17    2242**
:
           **v.** :   **CIVIL ACTION NO. _____**
:
OAKMONT CARE, LLC d/b/a :
**Oakmont Center for Nursing and** :
**Rehabilitation,** :
:
           **Defendant.** :

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a)   Habeas Corpus - Cases brought under 28 U.S.C. § 2241 through § 2225.5.    ( )

(b)   Social Security - Cases requesting review of a decision of the Secretary of Health  ( )
     and Human Services denying plaintiff Social Security Benefits.

(c)   Arbitration - Cases required to be designated for arbitration under Local Civil   ( )
     Rule 8.

(d)   Asbestos - Cases involving claims for personal injury or property damage from   ( )
     exposure to asbestos.

(e)   Special Management - Cases that do not fall into tracks (a) through (d) that are  ( )
     commonly referred to as complex and that need special or intense management
     by the court. (See reverse side of this form for a detailed explanation of special
     management cases.)

(f)   Standard Management - Cases that do not fall into any one of the other tracks.  (X)

May 16 2017                   /s/ John C. Kilgannon
                                John C. Kilgannon, Esquire
                                *Attorney for Plaintiff*

(Civ. 660) 1/02

MAY 16 2017




## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HEALTHCARE SERVICES GROUP, INC.,  :
                                 :
          Plaintiff,           :
                                 :
          v.                 :
                                 :  CIVIL ACTION NO.
OAKMONT CARE, LLC d/b/a Oakmont   :
Center for Nursing and Rehabilitation,   :
                                 :
          Defendant.        :
                                 :

17   2242

**FILED**

**MAY 16 2017**

KATE BARKMAN, Clerk
By_____Dep. Clerk

### COMPLAINT

Plaintiff, Healthcare Services Group, Inc. ("HCSG" or "Plaintiff"), by and through its undersigned counsel, complaining against Defendant, Oakmont Care, LLC d/b/a Oakmont Center for Nursing and Rehabilitation ("Oakmont"), avers as follows:

### The Parties

1. HCSG is a Pennsylvania corporation with its principal place of business at 3220 Tillman Drive, Suite 300, Bensalem, PA 19020.

2. Plaintiff is a citizen of Pennsylvania for purposes of diversity of citizenship subject matter jurisdiction.

3. Oakmont is a Delaware limited liability company with its last known address located at 26 Ann Street, Oakmont, PA 15139.

4. The two managers of Oakmont are Danielle Deutsche and Jeffrey Vegh, each of whom own fifty percent (50%) of the ownership interests. Ms. Deutsche and Mr. Vegh are both residents of the state of New York.

5. Oakmont is a citizen of New York for purposes of diversity of citizenship subject matter jurisdiction.

6. Oakmont operates a residential healthcare facility (the "Oakmont Facility") at 26 Ann Street, Oakmont, PA 15139.

### Jurisdiction and Venue

7. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of the Commonwealth of Pennsylvania and the Defendant is a citizen of New York because Defendant's members are both citizens of New York and the matter in controversy, exclusive of interest and cost, exceeds the sum of Seventy-Five Thousand Dollars in the aggregate.

8. This Court has personal jurisdiction over the Defendant under Pennsylvania's Long Arm Statutes, 42 Pa. C.S.A. § 5301 and 42 C.S.A. § 5322, and the United States Constitution because, among other things, the Defendant operated a business in the Commonwealth of Pennsylvania.

9. The Defendant consented to the exclusive jurisdiction and venue of this action in the United States District Court for the Eastern District of Pennsylvania pursuant to Section 6.6 of the PA Health Supply Services Agreement (defined below). Further, venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events and omission giving rise to this action occurred in the Eastern District of Pennsylvania.

### PA Health Supply Services Agreement

10. On February 27, 2014, HCSG and Oakmont entered into a PA Health Supply Services Agreement.

11. On January 12, 2015, Oakmont and HCSG entered into an Amendment to PA Health Supply Agreement (together with the PA Health Supply Services Agreement, the "Agreement"). A true and correct copy of the Agreement is attached hereto, made a part hereof, and marked as Exhibit "A."

2

12.  Pursuant to the Agreement, HCSG agreed to provide all necessary personnel and supervision to perform housekeeping and laundry services on the premises of the Oakmont Facility.

13.  HCSG also agreed to provide certain supplies and cleaning products to facilitate performance of those duties.

14.  Pursuant to the Agreement, Oakmont was required to pay HCSG's specified monthly sums in consideration of HCSG's providing laundry and housekeeping services to Oakmont. Specifically, Oakmont was required to pay Twenty Thousand Two Hundred Seventy-Nine Dollars and Nineteen Cents ($20,279.19) per month.

15.  Pursuant to the Agreement, payment for services rendered during a given month was due and payable on the last business day of the following month.

16.  Pursuant to the Agreement, the term of the Agreement commenced on March 1, 2014 and was continued unless cancelled by any party ninety (90) days after the services began, provided that a sixty (60) day written notice to terminate was given.

## Count I – Breach of Contract

17.  The allegations involved in the preceding paragraphs are repeated herein as if set forth at length.

18.  Pursuant to the Agreement, Oakmont was required to make monthly payments to HCSG for services rendered.

19.  Oakmont has failed and refused to pay HCSG for all services rendered by HCSG to Oakmont.

20.  The failure of Oakmont to make payments to HCSG when due constitutes breach of the Agreement.

3

21. As a direct and approximate result of Oakmont's breach of its contractual duties, HCSG has been and continues to be damaged.

22. Oakmont accepted the work performed by HCSG without reservation or complaint.

23. Despite demand, Oakmont failed and refused to pay the outstanding obligations owed to HCSG.

24. As of May 4, 2017, the total outstanding past due indebtedness owed by Oakmont to HCSG pursuant to the Agreement was $129,675.99.

25. The Agreement provides that HCSG shall be entitled to recover attorneys' fees in the event that it prevails in any action to enforce the Agreement .

WHEREFORE, Plaintiff, Health Care Services Group, Inc., demands that judgment be entered in its favor against Defendant, Oakmont Care, LLC d/b/a Oakmont Center for Nursing and Rehabilitation, in the amount of $129,675.99, plus interest, reasonable attorneys' fees and costs and such other and further relief that this Court deems necessary and just.

### Count II – Unjust Enrichment

26. The allegations involved in the preceding paragraphs are repeated herein as if set forth at length.

27. In the event it is determined that HCSG cannot proceed against Oakmont on a claim for breach of contract, then this Count is specifically plead in the alternative pursuant to Fed. R. Civ. P. 8(a).

28. HCSG provided laundry and housekeeping services for Oakmont at Oakmont's request and insistence and failed to remit payment due of $129,675.99, which amount is a fair and reasonable price for services rendered by HCSG.

4

29. Oakmont accepted the services and related supplies provided by HCSG without reservation or complaint and knew, or should have known, that HCSG expected to be paid for such services.

30. HCSG demands payment for the reasonable value of the services it supplied; however, payment has not been made.

31. Oakmont accepted and enjoyed the benefits of the services and supplies without remitting payment for the reasonable value of those goods and services.

32. If Oakmont fails to pay the reasonable value of the services, it will be unjustly enriched.

33. It would be unjust and inequitable to permit Oakmont to continue to enjoy the benefit of the services it supplies to the detriment of HCSG.

34. As a result of Oakmont's wrongful conduct, HCSG has been deprived of reasonable value of its services and supplies, which value is in excess of $129,675.99.

05/16/2017 SL1 1463304v1 104212.00378

WHEREFORE, Plaintiff Healthcare Services Group, Inc. demands judgment in its favor, and against Defendant, Oakmont Care, LLC d/b/a Oakmont Center for Nursing and Rehabilitation, in the amount of $129,675.99, plus attorneys' fees, costs, and interest and such other and further relief that this Court deems necessary and just.

Dated: ___May___ ___16___, 2017

STEVENS & LEE, P.C.

By: _____
John C. Kilgannon, Esquire
Attorney ID No. 82263
1818 Market Street, 29th Floor
Philadelphia, PA  19103
Telephone:  (215) 751-1943
jck@stevenslee.com

*Attorneys for Healthcare Services Group, Inc.*

6

**EXHIBIT A**

**PA Help Supply Services Agreement**       *OAKM009*

**AGREEMENT,** made this 27th day of February, 2014 by and between HEALTHCARE SERVICES GROUP, INC. (hereinafter referred to as "Healthcare"), a Pennsylvania corporation, with offices at 3220 Tillman Drive, Glenview Corporate Center, Suite 300, Bensalem, PA 19020

and

Oakmont Care LLC a Delaware Limited Liability Company (hereinafter referred to as "Client"), which operates the nursing home d/b/a Oakmont Center for Nursing and Rehabilitation located at 26 Ann Street, Oakmont, Pa 15139 (hereinafter referred to as the "Facility").

The parties hereto, intending to be legally bound, agree as follows:

**1. SCOPE OF WORK:**

Healthcare will provide all necessary personnel to perform the labor, as well as supervisory function in regards to the facility's housekeeping and laundry services requirements. Client will retain supervision of Healthcare for the performance under this agreement. In addition, the client will direct the work activities of Healthcare employees through the account manager provided by Healthcare. All existing housekeeping equipment will be utilized by Healthcare in performing its duties. Any repair of, replacement of, or addition to, housekeeping equipment will be [*CLIENT NAME*]'s responsibility. The value and utilization of the existing housekeeping equipment was a consideration in determining the service price. The scope of work described will be in compliance with the specifications and schedules attached hereto as Exhibits I and II to this Service Agreement.

**2. AGREEMENT AMOUNT:**

In consideration of Healthcare providing the aforesaid services, Client will pay to Healthcare the sum of $ 243,350.28 per year (based on a 365 day year), said sum to be paid in monthly payments, with payments due in the amount of $ 20,279.19 30 days from the date monthly services are rendered. For example, an invoice for Services rendered in March will be due on the last business day of April and so on. Please see Exhibit III for payment term addendum. Sales taxes, if applicable, will be added to the service billing and Healthcare shall be responsible for remittance of such taxes to the proper authorities. Healthcare and Client agree to review the service billing amount annually.

**3. TERM:**

The term of this Agreement shall commence on March 1, 2014 and will continue unless terminated as herein provided. This Agreement can be canceled by either party at any time after 120 days after the services begin, upon 90 days written notice. No notice of cancellation by Client shall be effective unless accompanied by payment of all amounts then due and owing to Healthcare for services provided up to and including the date of the notice. All other amounts due to Healthcare, including for

1

services provided up to and including the effective date of the cancellation, shall be due and payable on the effective date of cancellation.

**4. INSURANCE COVERAGE, EMPLOYEE TAXES, RATES AND BENEFITS:**

Healthcare will comply with all applicable Federal, state and local laws and regulations (including minimum wage requirements) regarding employment, compensation, benefits and payment of its employees. Healthcare will pay FICA, FUTA and worker's compensation and all applicable payroll and other taxes for its employees. Notwithstanding any adjustments in paragraph 2, should any Federal, state or locally mandated increase occur in any of these categories the service billing will be adjusted to reflect these changes. Healthcare will notify Client in writing of the increase and effective dates of these changes.

**5. CLIENT COOPERATION:**

During the term this Agreement, the Facility will be fully available to Healthcare so that the aforesaid services may be performed by Healthcare. Further, during the term of this Agreement, Customer will provide the necessary utilities, including but not limited to electricity and water, and reasonable access to the Facility's telecommunications, computer, e-mail, voice mail and similar systems, as necessary for Healthcare to perform the services.

**6. GENERAL PROVISIONS:**

6.1 Any notices given by either party to the other shall be given by mail (which shall be registered or certified, postage prepaid, with return receipt requested) or by courier. Notices by mail or courier shall be sent to the recipient at the address in the introductory paragraph of this Agreement and shall be deemed given five (5) days after mailing. Notices by courier shall be deemed given on the business day after delivery. Each party may change its address by written notice in accordance with this paragraph.

6.2 Neither party, in the performance of this Agreement, shall discriminate against any patient, employee, or other person because of race color, creed, sex, ancestry national origin, or handicap. Both parties to this Agreement shall comply with the requirements of Title VI of the Civil Rights Act of 1964 and Section 504 of the Rehabilitation Act of 1973.

6.3 Healthcare shall, until four years after the expiration of each contract year of this Agreement, upon written request, make available to the Secretary of the Department of Health and Human Services (HHS), or the Secretary's duly authorized representative, or upon request to the Controller General or the Controller General's duly authorized representatives this Agreement and such books documents and records pertaining to services provided during such contract year that are necessary to certify the nature and extent of costs under this Agreement. The availability of Healthcare's books, documents and records shall be subject at all times to such criteria and procedures for seeking or obtaining access as may be promulgated by the Secretary of HHS in regulations and other applicable laws. Healthcare's disclosure under this paragraph shall not be construed as a waiver of any other legal rights to which Healthcare or the Client may be entitled. Each party will notify the other within 10 days of receipt of a request for access.

2

If pursuant to this Agreement, any of Healthcare's duties and obligations are to be carried out by any individual or entity under a contract with Healthcare with a value of $10,000 or more over a twelve month period, and that subcontractor is to a significant extent, associated or affiliated with, owns, or is owned by or has control of or is controlled by Healthcare, each such subcontractor shall itself be subject to the access requirements and Healthcare shall require such subcontractor to meet the access requirements.

6.4 During the term of this Agreement, and for a period of one year after the termination of this Agreement, neither party shall hire management personnel (e.g. Account Managers, supervisors or District Managers) (a) still employed by the other; or (b) who had been employed by the other at any time within one year before or after the termination of this Agreement.

6.5 Healthcare and Client shall see that to the best of their ability the Facility's housekeeping and/or laundry departments are kept in compliance in all material respects with applicable state and federal regulations, to the extent within their respective control

6.6 This Agreement shall be governed and construed in accordance with the laws of the Commonwealth of Pennsylvania. Client consents to exclusive jurisdiction and venue in the Court of Common Pleas of Bucks County, Pennsylvania or the United States District Court for the Eastern District of Pennsylvania.

6.7 This Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, successors, personal representatives and assigns. This Agreement may not be assigned by either party without the written consent of the other.

6.8 The parties executing this Agreement on behalf of their respective entities represent that they are authorized to sign this Agreement on behalf of such entity and that the other party is relying on such representation.

6.9 This Agreement supersedes any and all other agreements related to the services provided for herein, either oral or written between the parties hereto with respect to the engagement of Healthcare by the Client and contains all the covenants and agreements between the parties with respect to its subject matter. This Agreement shall not affect or modify any other agreements between the parties with respect to the payment of any existing debts or obligations owed by the Client to Healthcare.

6.10 Attorney Fees: If suit is brought to enforce any of the terms or conditions of this Agreement, the prevailing party shall be entitled to recover such sums as the court may fix as costs and reasonable attorney fees, in addition to any other relief to which it may be entitled.

3

IN WITNESS WHEREOF, the parties hereto, or their duly authorized officers or agents, have executed, sealed and delivered this Agreement, in duplicate, intending to be legally bound hereby.

Oakmont Care LLC dba Oakmont Center for Nursing and Rehabilitation

Authorized
Signature: _____

Name: _____
Title: _____

Date: _____

HEALTHCARE SERVICES GROUP, INC.

Authorized
Signature: _____

Name: _____
Title: _____

Date: _____

4

## EXHIBIT I

### Full service housekeeping and laundry service

Healthcare Services Group, Inc. will provide:

- Full time Supervisor to oversee the services provided
- District Manager to oversee operation
- All staffing responsibility including:
    a) Salaries/wages
    b) Taxes
    c) Fringe benefits
    d) Uniforms
- All housekeeping supplies and equipment listed on Exhibit II
- All laundry chemicals including:
    a) Detergent
    b) Bleach
    c) Softener
    d) Sour

All laundry equipment repairs will be the responsibility of the Client.

5

## EXHIBIT II

The following is a list of supplies and chemicals provided by Healthcare Services Group, Inc.:

Germicidal Detergent
All Purpose Degreaser
Degreaser
Ammoniated Stripper
Floor Finish
Sealer (22% Solid)
Glass Cleaner
Ammonia
Cleanser
Bowl Cleaner
Furniture Polish
Metal Polish
Carpet Shampoo

Dust Mops and Handles
Dust Cloths
Mops and Mop Handles
Buff Pads
Stripping Pads
All supplementary tools for
light housekeeping
All laundry chemicals

Client will be responsible for the following supplies:

All paper products
All hand soap
All plastic liners

## EXHIBIT III

**Payment Term Addendum**

Healthcare agrees to extend payment terms as follows:

- The invoice for March 2014 Services will be due on May 30th 2014
- The invoice for April 2014 Services will be due on June 30th 2014
- The invoice for May 2014  Services plus 1/3 of June 2014  invoices will be due on July 31st 2014
- The invoice for July 2014 Services plus 1/3 of June 2014 invoices will be due on August 29th 2014
- The invoice for August 2014 Services plus 1/3 of June 2014 invoices will be due on September 30th 2014
- The invoice for September 2014 Services will be due on October 31st 2014

7

## AMENDMENT TO PA HELP SUPPLY SERVICES AGREEMENT

This Amendment (the "**Amendment**") to the PA Help Supply Services Agreement (the "**Services Agreement**") by and between Oakmont Care LLC, a Delaware Limited Liability Company ("**Client**"), and Healthcare Services Group, Inc. a Pennsylvania corporation ("**Healthcare**" and, collectively with Client, the "**Parties**"), is entered into this _12th_ day of January, 2015; and the Parties intending to be legally bound, hereby agree to, and the Services Agreement hereby is, amended as follows:

1.   Notwithstanding any contrary provision in the Services Agreement:

   a.   Payment is due for services rendered in November of 2014, on or before January 15, 2015;

   b.   Payment is due for services rendered in December of 2014, on or before February 15, 2015;

   c.   Payment is due for services rendered in January of 2015, on or before March 15, 2015;

   d.   Payment is due for services rendered in February of 2015, on or before April 15, 2015;

   e.   Payment is due for services rendered in March of 2015, on or before May 15, 2015; and

   f.   Payment is due for services rendered in April of 2015, on or before June 15, 2015; and

   g.   Payment is due for services rendered in May of 2015, on or before July 15, 2015.

2.   Payment for services rendered in June of 2015, and for all subsequent months, shall be due on or before the last business day of the following month. For example, payment for services rendered in June of 2015, shall be due on the last business day of July of 2015, and so on and so forth.

3.      The Parties hereby acknowledge that, under this structure, two payments shall be due from Client to Healthcare in July of 2015.

4.      The Parties agree that if the date of any payment due under the Services Agreement falls on a non-business day, such payment shall be due on the first business day immediately prior thereto.

5.      Other than those provisions of the Services Agreement specifically amended hereby, all other provisions of the Services Agreement shall remain in full force and effect.

Healthcare Services Group, Inc.

By: _____

Name: _Pannell Orea_____

Title: _VP of Financial Services___

Oakmont Care LLC

By: _____

Name: _Jack Weidel_____

Title: _Dir Special Projects_____